46 N.J. Super. 262 (1957)
134 A.2d 604
AGUSTINE V. CAMMARATA AND RICHARD COSTA, PLAINTIFFS-RESPONDENTS,
v.
ESSEX COUNTY PARK COMMISSION AND ROBERT B. KINSEY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued July 29, 1957.
Decided September 3, 1957.
*264 Before Judges CONFORD, HANEMAN and EWART.
Mr. John J. McDonough argued the cause for appellants (Messrs. Darby & McDonough, attorneys).
Mr. Abraham L. Friedman argued the cause for respondent (Mr. Doane Regan, attorney).
*265 The opinion of the court was delivered by EWART, J.S.C. (temporarily assigned).
By this action in lieu of prerogative writ plaintiffs attack the action of Essex County Park Commission in having removed them, without charges or hearing, as probationary patrolmen of the Essex County Park Commission. From a judgment in favor of plaintiffs, defendants appeal.
Essex County Park Commission is a body politic and corporate, with power to sue and be sued, use a common seal, and make and adopt by-laws. It was created by L. 1895, c. 91 (R.S. 40:37-99). Its officers and employees are not included in the classified civil service, (R.S. 11:22-2). By L. 1895, c. 91, as amended L. 1906, c. 102 (R.S. 40:37-154), the Legislature delegated to the commission the following powers:
"The commission may appoint and establish a constabulary, * * * and may organize the constabulary into a police system to be known as `the park police of the county of * * *'.

* * * * * * * *
The commission may establish proper rules and regulations for the appointment, control and management of the members of the constabulary, and for the securing of proper discipline and efficiency among the members thereof."
By L. 1928, c. 233, as amended L. 1946, c. 27 (N.J.S.A. 40:37-156), the Legislature provided that:
"No member or officer of the police force or police department shall be removed except after trial and conviction by the Park Commission, or a member or members thereof, of the violation of proper rules and regulations for the appointment, control and management of members of such force or department and for the securing of proper discipline and efficiency among the members thereof."
There is no statutory authority in express words for the park commission to appoint probationary members of its constabulary or police department.
Pursuant to the delegation of authority contained in R.S. 40:37-154, the commission did establish general rules and *266 regulations governing the park police (Exhibit D-2), and in addition thereto on June 17, 1954 the commission adopted a resolution:
"* * * That any person qualifying for a position as a patrolman on the Park Police of the County of Essex be employed for a probationary period of one year, during which time, upon recommendation of the Chief to the Board, the man's services may be discontinued, and at the end of the probationary period appointments to the force would be made only upon the report of the Chief that the individual had qualified."
Each of the plaintiffs filed written applications with the commission for employment as patrolmen in the police department, Cammarata under date of February 4, 1955, and Costa under date of February 2, 1955.
Under date of March 4, 1955 each of plaintiffs were notified by letter from defendant Kinsey, secretary and director of the park police, that they would be appointed probationary patrolmen effective March 25, 1955, the letter of notification reading in part:
"Your appointment to this Department is subject to your clearly understanding and accepting the provisions shown on the sheet attached hereto. You will note that there are two copies of this sheet, and you are directed to sign and date one copy of said sheet and return it to me at once in the self-addressed enclosed envelope."
The sheet referred to in said letter is set forth in the Appendix as Exhibit B annexed to the answer, was signed by each of plaintiffs and contains the information that:
"Applicants successfully meeting the requirements of the Department will be appointed for a probationary period of one year and will be sworn in as probationary members of the Department. During said period of probation, if at any time in the opinion of the superior officers of the Department, the Director, the Police Committee, or the Essex County Park Commission, an applicant does not continue to justify his employment, he may be immediately terminated. At the termination of his probationary period, the applicant's record in the Department for the preceding year will be reviewed and if found satisfactory, he will become a regularly appointed patrolman in the Department."
*267 The said sheet referred to is entitled:

"Essex County Park Commission Police Department Information for Applicants for Appointment as Probationary Patrolmen."
At the end of the sheet, each of the plaintiffs signed the following statement:
"I hereby certify that I have read, understand, acknowledge and accept the information and regulations stated above."
Plaintiff Cammarata signed the same on March 5, 1955, and plaintiff Costa on March 8, 1955.
The minutes of a meeting of the Essex County Park Commission held March 15, 1956 (Exhibit C annexed to the answer), show that the chairman of the police committee reported that the six men appointed probationary patrolmen on March 25, 1955 had been carefully evaluated from time to time during their probationary period, the most recent evaluation having been on March 3, 1956; that following a careful review of the findings of the evaluation committee by the chief it was found that four of the probationary patrolmen met the requirements of the Department and that two others did not. And the minutes contain the statement:
"It was the further recommendation of the Chairman of the Police Committee that the services of Agustine V. Cammarata and Richard F. Costa, those Probationary Patrolmen failing to qualify for appointment, be terminated, with their active duty to be discontinued at the end of their tour of duty on March 15, 1956, * * *. Upon motion duly made, seconded and unanimously passed, the recommendation of the Police Committee was approved and the Director of Police was instructed to issue the necessary police order."
By letter dated March 15, 1956 defendant Kinsey, secretary and director of police, notified plaintiffs of the termination of their services with the park police department and that their active duty with the police department would end on March 15, 1956.
*268 Plaintiffs contended below and here that the attempted appointment of plaintiffs as probationary patrolmen was without statutory authority; that they were appointed patrolmen pursuant to section 154 of the statute cited; that their appointments under that section made them regular permanent members of the park police; and that their removal without charges being made and without a hearing was invalid and of no legal effect.
Defendants-appellants, on the other hand, contend that power to appoint for a probationary term to the park police, although not set forth in express words in the statute, is necessarily incidental or essential to the exercise of the power expressly conferred by the statute to establish rules and regulations concerning the appointment of policemen, and that the resolution adopted by the park commission on June 17, 1954 providing for probationary service for a period of one year is therefore a valid provision; that preference of charges and conduct of a hearing is not necessary for the removal of probationary patrolmen; that plaintiffs were in fact appointed probationary patrolmen for a limited time and expressly accepted in writing such appointment; that as probationary patrolmen plaintiffs were never permanent members of the park police force within the contemplation of the statute; and that the action of the commission in terminating their services was entirely valid and proper.
There being no essential facts in dispute in this controversy, we pass directly to consideration of the statutes, R.S. 40:37-154 and N.J.S.A. 40:37-156. It is true there is no authority in express words authorizing the commission to provide for and appoint probationary patrolmen subject to removal without charges and without a hearing. However, the commission has by express words been authorized to establish proper rules and regulations for the appointment, control and management of the members of the park police and for the securing of proper discipline and efficiency among the members thereof.
*269 The idea of providing for a period of probationary service prior to a regular or permanent appointment is not novel. Our New Jersey Civil Service Act provides that appointments to positions in competitive, noncompetitive and labor classes of the classified service shall be for a probationary period of three months, and contemplates that the services of the appointees may be terminated during the probationary period without preferring charges or holding a trial (R.S. 11:22-6). The statutes of many states provide for a period of probationary service, or have directed the provision for such a probationary period by rules and regulations to be adopted by civil service commissions or similar agencies, designated to administer the law. Annotation 131 A.L.R. 383, 384. The fundamental object of civil service is said to be to fill governmental positions upon the basis of merit and fitness to serve, and that in furtherance of that object provisions have been made for probationary service prior to the making of regular appointments. Idem., page 384. Judge Schettino speaks of probationary service as a means of furnishing an additional test of efficiency. Devine v. City of Plainfield, 31 N.J. Super. 300 (App. Div. 1954).
The Legislature, having declared its policy and purpose, and provided standards for the exercise of the power, may properly confer upon administrative authorities power to enact rules and regulations to promote the spirit of the legislation and carry it into effect. Such legislation does not violate the constitutional inhibition against delegation of the legislative function. 42 Am. Jur., "Public Administrative Law," section 26. And rules and regulations adopted by administrative authorities pursuant to the power delegated to them by the Legislature have the force and effect of law. Id., section 102.
It is well settled that the grant of express power by the Legislature is always attended by the incidental authority fairly and reasonably necessary or appropriate to make it effective. Edwards v. Mayor & Council of Borough of Moonachie, 3 N.J. 17 (1949); Kirsch Holding Co. v. *270 Borough of Manasquan, 24 N.J. Super. 91 (App. Div. 1952); Essex County v. Hindenlang, 35 N.J. Super. 479 (App. Div. 1955); Lane v. Holderman, 23 N.J. 304, 315 (1957).
True that the powers of administrative boards and commissions are limited by the statutes creating them to those conferred expressly or by necessary or fair implication. However, in determining whether a board or commission does possess a certain power, the authority given is to be liberally construed in the light of the purposes for which it was created, and that which is incidentally necessary to a full exposition of the legislative intent should be upheld as being germane. 42 Am. Jur., "Public Administrative Law," section 26. The terms of the legislative grant should be reasonably construed to serve the central legislative design. Hill v. Borough of Collingswood, 9 N.J. 369, 376 (1952). A rule of strict construction cannot be permitted to defeat the evident legislative design. A statute may speak as plainly by inference, and by means of the purpose which underlies it, as in any other manner. That which is clearly implied is as much a part of the law as that which is expressed. Alexander v. New Jersey Power & Light Co., 21 N.J. 373, 379 (1956).
When the Legislature delegated to the Essex County Park Commission the power to establish proper rules and regulations for the appointment, control and management of a police department and for the securing of proper discipline and efficiency among the members thereof, it would seem apparent that it contemplated the adoption of such rules and regulations as might be reasonably necessary to accomplish the legislative purpose. Certainly it was unnecessary for the Legislature to spell out in detail the specific terms and provisions that should be incorporated in such rules and regulations. Any reasonable provision in furtherance of the legislative object or reasonably calculated to accomplish the legislative purpose would come within the delegated power.
*271 It would seem to us and we have concluded that a provision in the rules and regulations of the park commission for the appointment of patrolmen for a probationary period before such patrolmen may become permanent members of the police force is entirely reasonable and proper; is designed to accomplish the legislative mandate for the appointment, control and management of the members of the police department and for the securing of proper discipline and efficiency among them; and that the power to provide for probationary service is an incidental power fairly and reasonably necessary and appropriate to make effective the express authority granted by the statute.
Furthermore, plaintiffs were expressly appointed as probationary patrolmen, subject to removal within one year, and were not appointed to the permanent police force; they expressly accepted such appointment in writing; and we do not think their contention that their appointment as probationary patrolmen was irregular and illegal can strengthen their case. They can prevail only by showing that they were regularly appointed to the permanent park police force; not by showing that the probationary appointment was improper. State ex rel. Wm. Eckelmann, Inc., v. Jones, 4 N.J. 207, 213 (1950).
Plaintiffs further contend that if the power in dispute was granted the park commission by the 1906 act, it must be deemed to have been repealed, pro tanto, by the 1928 supplement prohibiting removal of park police without a trial and for cause. But that conclusion is a non sequitur unless the 1928 act is necessarily inconsistent with the existence of the system of probationary appointments. We think they are not inconsistent. The Legislature could consistently empower an appointing agency to require an applicant for appointment to the park police to prove his fitness for service by a probationary test period, and at the same time protect permanently appointed policemen from being discharged without cause.
Reversed.