BOROUGH OF PARAMUS, NEW JERSEY, PLAINTIFF, v.
MARTIN PAINT STORES, INC., DEFENDANT.

Bergen County Court
Law Division.

Decided November 22, 1972.

596

Mr. *Marvin Olick* for plaintiff. (*Messrs. Gruen, Sorkow & Sorkow,* attorneys).

Mr. *Martin Spritzer* for defendant (*Messrs. Spritzer & Bressler,* attorneys).

GELMAN, J. C. C. The sole issue on this appeal from the Municipal Court of the Borough of Paramus is the validity of the borough ordinance which was the basis for defendant's convictions.

The facts are not disputed. The Borough of Paramus is located in central Bergen County and has within its boundaries several major arterial highways serving not only the borough but the county and State as well. Along the routes of those highways are numerous retail business establishments, a great number of which are grouped together in major shopping centers. Defendant Martin Paint Stores, Inc. operates a chain of retail stores which sell paint, home decorating merchandise, and hardware. One of defendant's stores is located within the Garden State Plaza, the largest of the shopping centers in Paramus.

During the month of May 1972 the Borough of Paramus enacted ordinance 72–11, which was entitled:

An ordinance prohibiting worldly employment or business, except works of necessity and charity on the legal holidays designated Memorial Day, Independence Day (4th of July) and Thanksgiving Day in the Borough of Paramus, County of Bergen, State of New Jersey, and providing penalties for the violation thereof.

As indicated by its title, ordinance 72–11 is a "holiday closing" ordinance which requires most businesses to remain closed on the three named legal holidays. Exceptions are made for the conduct of certain business activities substantially identical to those permitted under the State's Sunday closing statute. *N. J. S.* 2A:171–1 *et seq.*

On May 29 (Memorial Day) and on July 4, 1972 defendant's Paramus store was open for and did in fact transact business, contrary to the provisions of the ordinance. Subsequently, defendant was found guilty of violating the ordinance on each of the holidays and fined $75 plus $10 costs for each violation.

Defendant challenges the validity of the ordinance on two grounds: it asserts that ordinance 72–11 is either *ultra vires* because it is contrary to the legislative policy declared by *N. J. S. A.* 36:1–2, or that it is unconstitutional because its arbitrary classification of proscribed activities violates the equal protection provisions of the Federal and State Constitutions. In keeping with settled judicial policy, the constitutional issues will not be examined since in the court's view the ordinance is *ultra vires,* and a determination of the constitutional issues is therefore unnecessary. *State v. Fairlawn Service Center Inc.,* 20 *N. J.* 468, 470–471 (1956); *Donadio v. Cunningham,* 58 *N. J.* 309, 325–326 (1971).

The question for consideration here is essentially whether *N. J. S. A.* 36:1–2 declares a state policy which preempts any conflicting municipal action under the Home Rule Act, *N. J. S. A.* 40:48–1 *et seq.* The question is one of first impression, although the Appellate Division, in a dictum in *Elizabeth v. Windsor-Fifth Avenue,* 31 *N. J. Super.* 187 (App. Div. 1954), expressed the view that the licensing provisions of the Home Rule Act, *N. J. S. A.*

40:52–1(g) do not sanction such action. The answer to the question obviously requires an examination of the legislative intent which must be inferentially determined.

*Chapter* 1 of *Title* 36 of the *New Jersey Statutes* creates and defines legal holidays. It also proscribes certain activities on those days designated as holidays and half-holidays. The main thrust of those proscriptions is directed at the commercial banking field. Since its original passage in 1891 this chapter has been amended many times, most recently by *L.* 1969, *c.* 132. The various amendments generally have created new holidays, established new dates of observance for existing holidays, or changed the degree and extent to which Saturday· would be considered a holiday or half-holiday. Despite these numerous amendments during the 81 years since its passage, the provisions of the original enactment concerning the transaction of business by individuals and corporations on holidays has never been amended.

Section 3 of *L.* 1891, *c.* 43, provided that

* * * the provisions of this act [governing holidays] shall not be construed as interfering with any person or corporation transacting business in this state, either private or public, but every such person or corporation *shall be permitted to conduct business on any holiday* or half holiday herein designated, *in the same manner as if this law had not been passed.* [Emphasis supplied.]

The language above quoted was modified only in the enactment of the *Revision* of 1937. At that time section 3 of *L.* 1891, *c.* 43, was designated *N. J. S. A.* 36:1–2 and altered to its present form, which reads as follows:

Any person or corporation may transact either private or public business in this state on any designated holiday or half holiday, in the same manner as on any other day of the week on which it is lawful to transact such business.

The changes made in section 3 by the Commission on Revision were intended to consolidate and clarify it without altering its substance or affecting the legislative intent em-

bodied in it.[1] Any construction of *N. J. S. A.* 36:1–2 must therefore reflect the historical mandate of section 3 as well as the current language of *N. J. S. A.* 36:1–2.

The power of a municipality to enact any ordinance is derived from and limited by legislative authorization; but where delegated, such powers are to be liberally construed. *N. J. Const.* (1947), *Art.* IV, § VII, *par.* 11; *Fred v. Mayor, etc. Old Tappan,* 10 *N. J.* 515, 518 (1952); *Moyant v. Paramus,* 30 *N. J.* 528, 534–535 (1959). The omnibus police power provisions of *N. J. S. A.* 40:48–2[2] and the general regulatory powers granted in conjunction with the licensing provisions of *N. J. S. A.* 40:52–1 (g)[3] are the asserted authority for the enactment of ordinance 72–11. While neither of these statutes contains specific authority to regulate business transactions on holidays, the borough contends that the general authority delegated by these statutes is an adequate basis for upholding 72–11 despite the conflicting language of *N. J. S. A.* 36:1–2.

---

[1] See "Report of the Commission on Revision and Consolidation of the Public Statutes, Supplemental to the Letter of Transmittal accompanying the Final Draft of Proposed Revision," 4 *Revised Statutes of New Jersey* of 1937, IV, 19–20.

[2] Under *N. J. S. A.* 40:48–2 "Any municipality may make, amend, repeal and enforce such other ordinances, regulations, rules and by-laws not contrary to the laws of this state or of the United States, as it may deem necessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants, and as may be necessary to carry into effect the powers and duties conferred and imposed by this subtitle, or by any law."

[3] *N. J. S. A.* 40:52–1(g) authorizes municipalities to enact, amend, and enforce ordinances to license and regulate "Lumber and coal yards, stores for the sale of meats, groceries and provisions, dry goods and merchandise, and goods and chattels of every kind, and all other kinds of business conducted in the municipality other than herein mentioned, and the places and premises in or at which the business is conducted and carried on; street stands for the sale or distribution of newspapers, magazines, periodicals, books, and goods and merchandise or other articles."

Speaking for the court in *Kennedy v. Newark,* 29 *N. J.* 178 (1959), Chief Justice Weintraub presented the following standard for evaluating apparent conflicts between the exercise of the municipal police power and state statutory law:

> It is fundamental that in the exercise of delegated power a municipality may not legislate in conflict with state statutes. [Citations omitted.]
>
>        *    *    *
>
> [However,] before it can be said that the police power delegated to local government must remain inert, it must be clear that the Legislature intended to occupy the field or declared a policy at war with the decision made by local government. The delegated power may not be restrained upon the basis of speculation or dubious inference. [at 186, 187]

Examining the same issue ten years later, the Chief Justice further explained the New Jersey preemption standard in *Summer v. Teaneck,* 53 *N. J.* 548 (1969), stating that

> * * * an ordinance will fall if it permits what a statute expressly forbids or forbids what a statute expressly authorizes. Even absent such evident conflict, a municipality may be unable to exercise a power it would otherwise have if the Legislature has preempted the field. * * * It is not enough that the Legislature has legislated upon the subject, for the question is whether the Legislature intended its action to preclude the exercise of the delegated police power. *Masters-Jersey, Inc. v. Mayor and General Council of Borough of Paramus,* 32 *N. J.* 296 (1960). * * * The ultimate question is whether, upon a survey of all the interests involved in the subject, it can be said with confidence that the Legislature intended to immobilize the municipalties from dealing with local aspects otherwise within their power to act. [at 554–555]

For recent illustrations of the application of the preemption standards set forth in *Kennedy* and *Summer, supra,* see *Chester Tp. v. Panicucci,* 116 *N. J. Super.* 229, 234 (App. Div. 1971) (local gun control ordinance held valid because it supplemented rather than conflicted with state hunting statute); *State v. Pinkos,* 117 *N. J. Super.* 104 (App. Div. 1971), certif. den. 60 *N. J.* 195 (1972) (invalidated hunting ordinance deemed to be in conflict with

state hunting statute) ; *Mogolefsky v. Schoem,* 50 *N. J.* 588 (1967) (soliciting ordinance held not to be in conflict with state statute licensing real estate salesmen and brokers).

The language of *N. J. S. A.* 36:1–2 in and of itself strongly suggests a legislative intent to declare a state policy preempting local regulatory control over holiday business activity. This conclusion is confirmed by an examination of the legislative history of the current Home Rule Act, *L.* 1917, *c.* 152, *N. J. S. A.* 40:48–1 *et seq.* At the same time the Home Rule Act was adopted, the Legislature also enacted *L.* 1917, *c.* 97, which expressly delegated authority to municipalities to adopt ordinances "* * * To regulate the opening and closing of barber shops on Sundays and legal holidays * * *." The fact that the same session of the Legislature omitted a general delegation of authority to control holiday business activity under the police power or licensing provisions of the Home Rule Act must be deemed to have been deliberate and evidential of its intent not to include such authority within those sections. The specific grant of authority with respect to barber shops was the basis for the holding in *Amodio v. Board of Comm'rs, W. New York,* 133 *N. J. L.* 220 (Sup. Ct. 1945), which rejected an argument that a municipal ordinance regulating among other things, the closing of barber shops on holidays was invalid.

In 1938 the Legislature similarly delegated specific authority to municipalities to regulate holiday closings, but again limited the grant to a specific type of business, *i. e.,* beauty parlors. *L.* 1938, *c.* 249; *N. J. S. A.* 40:48–2.1. The language used to delegate this authority is as follows:

The governing body of any municipality in this State shall have the power:

(a) To pass, enforce, alter or repeal ordinances to take effect within the limits of such municipality for the following purposes:

To regulate the opening and closing of beauty parlors on Sunday and holidays * * *.

It is obvious that where the Legislature has sensed the need for local control over holiday closing it has granted

such authority. In doing so it has employed language which leaves no doubt that the local exercise of such authority is to be limited to the specific business activity involved. The narrowness of the exceptions which have been legislatively recognized suggests that *N. J. S. A.* 36:1–2 still declares a public policy of the State which preempts conflicting local regulatory activity.

The Borough urges that since *N. J. S. A.* 36:1–2 was enacted in 1891 it should not be construed to preempt local regulations necessary to deal with current problems; in other words, it is suggested that the statute is outmoded and should be ignored. The judicial interpretation of the public interest as reflected in decisional law is, of course, subject to change to meet "modern concepts and needs." *Collopy v. Newark Eye and Ear Infirmary,* 27 *N. J.* 29, 42 (1958). See also, *Immer v. Risko,* 56 *N. J.* 482 (1970). However, courts are not free to disregard the public policy of the State as declared by the Legislature in its enactments. Whether statutory law adequately delegates authority to deal with current local problems is a matter for legislative determination. As the Supreme Court said in *Two Guys from Harrison, Inc. v. Furman,* 32 *N. J.* 199 (1960):

It is worth repeating that the Judiciary is not concerned with the good sense of a statute. Policy matters are the exclusive responsibility of the legislative branch of government. [at 229]

The judgments of conviction are reversed.