ANNE C. BORGER, PLAINTIFF, v. BOROUGH OF STONE HARBOR, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY; JAMES G. WOOD, MAYOR; ROBERT J. FITZPATRICK, COUNCILMAN AND CHAIRMAN OF THE POLICE COMMITTEE; ERIC J. ARENBERG, COUNCILMAN AND A MEMBER OF THE POLICE COMMITTEE; LOUIS C. CLELLAND, COUNCILMAN AND A MEMBER OF THE POLICE COMMITTEE, AND WILLIAM B. DONOHUR, CHIEF OF POLICE; JOINTLY, SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS.

Superior Court of New Jersey
Chancery Division Cape May County

Decided February 19, 1981.

*Carmen H. Alvarez* for plaintiff (*Holmes and Alvarez,* attorneys).

*W. M. Balliette, Jr.* for defendants (*Cafiero and Balliette,* attorneys).

HAINES, J. S. C.

Anne C. Borger received a one-year probationary appointment to the Stone Harbor, New Jersey, police force. After serving as a police officer for several months, but less than a year, she was discharged, without stated reasons or a hearing. She then filed this suit, seeking reinstatement and damages. This opinion is written in response to an order to show cause obtained by her to enforce her demand for a hearing. The facts as to this issue are not in dispute and the question of procedural rights may be decided as a matter of law. *Judson v. Peoples,* 17 *N.J.* 67 (1954).

Plaintiff, relying upon *Owen v. City of Independence,* 445 *U.S.* 622, 100 *S.Ct.* 1398, 63 *L.Ed.*2d 673 (1980), first argues that she was entitled to a hearing before being dismissed. That decision, however, requires a hearing only when the dismissal stigmatizes the discharged employee. In *Owen* a police chief was discharged in the course of an investigation of his department, during which a member of the city's governing body made a public statement implicating the chief in highly improper activities. In a later criminal proceeding against the chief the prosecutor failed to obtain an indictment. The stigma was obvious. In the present case plaintiff was discharged without comment. No publicity attended the termination of her employment contract. It is nevertheless argued that these circum-

stances, coupled with an alleged failure on the part of the Stone Harbor Police Department to keep plaintiff informed as to the quality of her performance, created a stigma. I disagree. If this reasoning were applicable, any and every discharged public employee would be entitled to a hearing. This is not the law laid down in *Owen*. On the contrary, affirmative deprecatory action must occur which affects the reputation of the discharged employee before due process requires a hearing. Here, Borger was not the victim of such action. She is not entitled to a hearing on the theory of *Owen*.

She advances the further argument, however, that applicable New Jersey statutes require a hearing in her case. She was employed for one year as a probationary employee, as required by the existing collective bargaining agreement between the PBA and the Borough of Stone Harbor. In a Civil Service community a probationary police officer may be discharged without a hearing during the term of probation. *N.J.S.A.* 11:22–6 requires new appointees to serve a probationary period of 12 months and requires no hearing in the event of a discharge during that time; a written notice that a permanent appointment will not be made is sufficient. However, Stone Harbor is not a Civil Service municipality. Its authority to establish a police department is found in *N.J.S.A.* 40A:14–118, a part of a general revision of municipal statutes adopted in 1971. The revision authorizes only two municipal classifications for police officers: special police officers, *N.J.S.A.* 40A:14–146, and permanent officers, *N.J.S.A.* 40A:14–128. The appointment of "temporary employees in emergencies, or for certain specified parts of the year, as needed," is provided for in *N.J.S.A.* 40A:14–122. The revision does not authorize a non-Civil Service probationary appointment to a police force.

Stone Harbor suggests that the appointment was proper because it was required by reason of its collective bargaining agreement. While these agreements are enforceable, *Stone*

*Harbor v. Wildwood Local, 59, P. B. A.,* 164 *N.J.Super.* 375 (App.Div. 1978), certif. den. 81 *N.J.* 270 (1979), they cannot confer powers upon a municipality which are not established in the first instance by the Legislature. Under our Constitution, while powers granted to municipalities are to be construed liberally, those not granted are reserved to the State. *Paramus v. Martin Paint Stores,* 121 *N.J.Super.* 595 (Law Div. 1972), app. dism. 128 *N.J.Super.* 138 (App.Div. 1974). Consequently, the probationary requirement of the collective bargaining agreement must be disregarded unless it was authorized by statute.

Borger was permitted to carry a weapon when she was off duty. As a consequence, she could not have been a special officer, since *N.J.S.A.* 40A:14–146 provides that "no . . . special policeman shall carry a revolver or other similar weapon when off duty." It is clear that she was not a temporary officer hired on an emergency basis. Consequently, she would enjoy the only classification left, that of permanent officer. Under *N.J.S.A.* 40A:14–128 her employment would be "indeterminate and continuous during good behavior and efficiency," and, pursuant to *N.J.S.A.* 40A:14–147, she could be discharged only for just cause, after being served with a written complaint and receiving a hearing.

■ This analysis reflects Borger's position, but it fails to consider the effect of *N.J.S.A.* 52:17B–68 and 69. Section 68 provides:

> Every municipality and county shall authorize attendance at an approved school by persons holding a probationary appointment as a police officer, and every municipality and county shall require that *no person shall hereafter be given or accept a permanent appointment as a police officer unless such person has successfully completed a police training course at an approved school....* [Emphasis supplied]

Section 69 adds:

> Notwithstanding the provisions of R.S. 11:22–6, a probationary or temporary appointment as a police officer may be made for a total period not exceeding 1 year for the purpose of enabling a person seeking permanent appointment to

take a police training course as prescribed in this act . . . *No person shall be permitted to take a police training course unless he holds such* probationary or temporary appointment. . . . [Emphasis supplied]

These statutes are not a part of *Title* 11, "Civil Service", or *Title* 40A, "Municipalities and Counties"; as a part of *Title* 52 they relate to state government, departments and officers, a title which includes regulations affecting municipalities generally. They must therefore be read *in pari materia* with municipal *and* Civil Service statutes relating to police employees. *Mimkon v. Ford*, 66 *N.J.* 426 (1975).

█ The reference in *N.J.S.A.* 52:17B–69 to "the provisions of R.S. 11:22–6" does not limit its application to Civil Service employees. On the contrary, it must be read with *N.J.S.A.* 52:17B–68 as applying to all police officers, whether employed by Civil Service or non-Civil Service municipalities. There is no logical basis upon which to distinguish police employees in these two categories of municipalities in terms of training requirements. The reference to *R.S.* 11:22–6 appears only because that section of the Civil Service Law, at the time of the passage of *N.J.S.A.* 52:17B–69, permitted probationary appointments of only three months; it has been amended since to provide for one-year appointments, and now coincides with the training statute. The legislative declaration enacted as a part of the statutory scheme of compulsory training provided in part

. . . that the present need for improvement [in the administration of local and county law enforcement] can be substantially met by the creation of a compulsory educational and training program for persons who seek to become permanent law enforcement officers wherein such persons will be required, while serving in a probationary capacity, prior to permanent appointment, to receive efficient training in this profession provided at facilities selected, approved and inspected by a commission created for such purpose. . . .

The Legislature made no distinction between police officers subject to Civil Service laws and those not so subject. It follows that the training laws apply to all police officers and establish a classification of temporary or probationary employment for them in all municipalities. Were the statutes read otherwise,

municipalities would not be able to employ permanent police officers, since no person may be given a permanent appointment unless a police training course has been completed successfully, and no person may take that course unless a probationary or temporary appointment is held.

It is apparent that the Legislature, in using the word "temporary" in the training statutes, did not intend to refer to police personnel appointed under *N.J.S.A.* 40A:14–122 for emergency duty or for "parts of a year, as needed." On the contrary, the legislative declaration underlines the intention to create "a probationary or temporary appointment" classification for the purpose of establishing a well-trained permanent police force, something very different from an emergency force. The words "probationary" and "temporary" are therefore to be read interchangeably.

A further problem arises from the fact that no statute except *N.J.S.A.* 11:22–6, dealing with Civil Service communities, makes any provision for the discharge of a probationary police officer. Thus, in a municipality that has not adopted Civil Service there is statutory authority to make probationary appointments but no such authority for their termination. It is most unlikely, however, that the Legislature intended to require written complaints and hearings as a condition to the discharge of a non-Civil Service employee when those procedures are not necessary in the case of a Civil Service employee. In addition, these protections are specified in *N.J.S.A.* 40A:14–147 only for permanent police personnel. The failure to provide them for any other classification of police officer is a strong indication that they are not required with respect to these classifications.

I conclude that Officer Borger's probationary appointment was proper and that she is not entitled to the written complaint and hearing required in the case of a permanent appointee. Consequently, her motion must be denied.