920 A.2d 725 (2007)
392 N.J. Super. 322
Kevin J. AZZARA, Plaintiff-Respondent,
v.
TOWNSHIP OF WATERFORD, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued January 17, 2007.
Decided April 20, 2007.
Todd J. Gelfand, argued the cause for appellant (Barker & Scott, attorneys; Mr. Gelfand, on the brief).
F. Michael Daily, Jr., argued the cause for respondent.
Before Judges LISA, HOLSTON, Jr. and GRALL.
The opinion of the court was delivered by LISA, J.A.D.
The novel issue presented by this appeal is whether an individual hired as a municipal police officer under the so-called alternate route method authorized by the 1998 amendment to the Police Training Act (PTA), N.J.S.A. 52:17B-66 to -77.6, may be subject to a probationary *726 period during which he or she can be terminated without cause. The trial judge found that defendant, Waterford Township, a non-civil service municipality, lacked authority to impose a probationary period under these circumstances. The judge therefore granted plaintiff's summary judgment motion, determining that defendant's termination of plaintiff without cause was unlawful and ordering plaintiff's reinstatement. We disagree and reverse.
With exceptions not relevant here, the PTA requires the successful completion of an approved police training course as a prerequisite to appointment as a permanent police officer in a municipal police department. N.J.S.A. 52:17B-68. As originally enacted, the PTA required that an individual was eligible to enroll in a course only if he or she was first hired as a police officer on a probationary or temporary basis. N.J.S.A. 52:17B-69. Under this scheme, often referred to as the traditional method, the municipality would then pay the cost of the course, and the officer would attend on a leave of absence with pay. Ibid. The probationary period could not exceed one year, but, apparently recognizing that enrollment availability fluctuates and the course lasts a number of months, the statute allows for an extension of not more than six months if necessary for completion of the course. Ibid.
The 1998 amendment authorized an alternate route, by which an individual not hired as a police officer could enroll in a police training course at his or her own expense and attend on his or her own time, subject to meeting prescribed qualifications and passing a background check. N.J.S.A. 52:17B-69.1. Upon successful completion of the course, the individual could seek appointment as a police officer. Ibid. The amendment further provides that an alternate route individual "shall only be eligible for appointment as a permanent full-time member of a police department or force." N.J.S.A. 52:17B-69.2. The interpretation of this provision is the basis of the dispute in this case.
The material facts are undisputed. Plaintiff availed himself of the alternate route. He enrolled in a course at the Camden County Police Academy on January 27, 2003 and successfully completed it on June 27, 2003. On December 15, 2004, Waterford Township hired plaintiff as a police officer. Waterford Township had in effect an ordinance[1] and departmental rules and regulations providing that no person may receive a permanent appointment as a police officer without first receiving and completing a one-year probationary or temporary appointment as a police officer after successfully completing an approved police training course. On December 8, 2005, plaintiff was notified by a letter from the chief that the department *727 was "terminating [his] probation effective immediately."
Plaintiff brought this action, contending his appointment was permanent from the outset pursuant to N.J.S.A. 52:17B-69.2, and he could not be terminated except for cause after the filing of charges and a hearing. See N.J.S.A. 40A:14-147. Plaintiff moved for summary judgment, seeking reinstatement. Waterford Township cross-moved for summary judgment, seeking dismissal of the complaint. The judge granted plaintiff's motion and denied the Township's.[2] He concluded that the plain language of N.J.S.A. 52:17B-69.2 required plaintiff's appointment to be permanent from the outset, thus precluding termination without cause at any time. Alternatively, he reasoned that even if the Township was permitted to impose a one-year probationary term, the five months plaintiff spent in the training course should be tacked on to the fifty-one weeks he spent as a member of the Township police department, thus making plaintiff's aggregate service more than one year. We reject both rationales.
When the language of a statute is clear and unambiguous, the statute must be enforced as written. Hubbard v. Reed, 168 N.J. 387, 392, 774 A.2d 495 (2001). Where a literal interpretation of individual statutory terms would lead to results inconsistent with the overall statutory scheme of which it is a part, that interpretation should be rejected. Id. at 392-93, 774 A.2d 495. Words of a statute must be read not only for their ordinary meaning, but in context with related provisions so as to give sense to the legislation as a whole. Chasin v. Montclair State Univ., 159 N.J. 418, 426-27, 732 A.2d 457 (1999).
When interpreting statutes, the overriding judicial function is to determine the Legislature's intent. Alan J. Cornblatt, P.A. v. Barow, 153 N.J. 218, 231, 708 A.2d 401 (1998). This is especially true where the language is susceptible of more than one possible interpretation. Ibid. Our analysis therefore requires consideration of the language of N.J.S.A. 52:17B-69.2, related statutes and legal principles, the purpose of the 1998 alternate route amendment, and any relevant legislative history.
N.J.S.A. 52:17B-69.2 provides: "A person who completes a police training course pursuant to [N.J.S.A. 52:17B-69.1] shall only be eligible for appointment as a permanent full-time member of a police department or force." The section to which it refers, N.J.S.A. 52:17B-69.1, is the other component of the 1998 amendment. It provides: "A person who does not hold a probationary or temporary appointment as a police officer, but who is seeking such an appointment may enroll in a police training course. . . ." N.J.S.A. 52:17B-69.1a. The initial phrase in this section relates back to the traditional method for enrolling in and completing the required training course:
Notwithstanding the provisions of R.S. 11:22-6, a probationary or temporary appointment as a police officer may be made for a total period not exceeding 1 year for the purpose of enabling a person seeking permanent appointment to take a police training course as prescribed in this act, provided, however, that the time period may exceed 1 year for those persons enrolled prior to the 1-year limit in a police training course scheduled to end subsequent to the 1-year limit, and for those persons who, prior to the 1-year limit, have been *728 scheduled to attend a police training course which commences subsequent to the 1-year limit. In no case shall any extension granted for the reasons herein listed exceed 6 months. Every person holding such a probationary or temporary appointment shall enroll in a police training course, and such appointee shall be entitled to a leave of absence with pay during the period of the police training course.
[N.J.S.A. 52:17B-69.]
This section begins with a reference to a provision of the Civil Service Act, N.J.S.A. 11:22-6 (repealed and replaced by N.J.S.A. 11A:4-15; see L. 1986, c. 112), which provided at the time of the PTA's adoption for a three-month working test period for employees in municipalities that adopted civil service. See Borger v. Borough of Stone Harbor, 178 N.J.Super. 296, 301, 428 A.2d 958 (Ch.Div.1981). The Civil Service Act was subsequently amended to provide for a twelve-month working test period for entry level municipal police officers. See N.J.S.A. 11A:4-15a; Borger, supra, 178 N.J.Super. at 301, 428 A.2d 958. "The purpose of the working test period is to permit an appointing authority to determine whether an employee satisfactorily performs the duties of a title." N.J.S.A. 11A:4-15. The working test period shall not include any time served by an employee under "provisional" or "temporary" employment. N.J.A.C. 4A:4-5.2(a). Thus, under the traditional method embraced by the PTA, the "probationary or temporary" appointment for the purpose of completing the required training does not count towards the working test period.
More specifically, officers following the traditional method "shall not begin their working test period until notification is received by the appointing authority from the Police Training Commission of the successful completion of the police training course." N.J.A.C. 4A:4-5.2(d)(1). And, officers "who have successfully completed the police training course prior to appointment shall begin their working test period on the date of regular appointment." N.J.A.C. 4A:4-5.2(d)(1)(i). Upon successful completion of the working test period, an officer, under civil service, becomes a "permanent employee" who has "acquired the tenure and rights resulting from regular appointment." N.J.A.C. 4A:1-1.3; see also Cipriano v. Dep't. of Civil Serv., 151 N.J.Super. 86, 90, 376 A.2d 571 (App.Div. 1977) (completion of working test period is a basic condition of permanent employment); accord Atty. Gen. F.O. 1963, No. 6 (opining that the PTA probationary period is for the purpose of educating and training local police officers and is supplementary to and does not take the place of the civil service "probationary period," i.e. the working test period, used to evaluate the on-the-job conduct of police officers before their appointments become permanent); Atty. Gen. F.O. 1977, No. 25 (same).
It is thus clear that the longstanding scheme established by the Civil Service Act and the accompanying regulations embodied in Title 4A of the New Jersey Administrative Code, under the auspices of the Merit System Board, see N.J.A.C. 4A:1-3.3, provide for a separate and distinct one-year working test period for municipal police officers, beginning after successful completion of the training course required by the PTA. The two periods serve two different purposes. One provides the required mechanism under the PTA's traditional method by which candidates for the position of permanent police officer are screened and selected by a local department and then sponsored for enrollment in a training course. Its purpose is to make possible the required training. Its duration is as long as necessary to complete the training course, not to exceed *729 twelve, or at most, eighteen months. The other period is to enable the department to evaluate the candidate's on-the-job conduct, after completion of the training course, but before he or she can achieve permanent status.
The alternate route does just what its name denotes. It provides individuals wishing to become permanent police officers with a different mechanism of being permitted entrance in a training program, without first being selected and hired, after which they can seek employment with local departments. These individuals are more attractive candidates because they have already successfully completed the course at no expense to the municipality. But the purpose of the working test period remains unfulfilled. The department still needs to evaluate the candidate's on-the-job conduct before permanent status can be conferred.
Because the PTA's purpose is to professionalize law enforcement in all municipalities throughout the state, and because the training mandated by the PTA is a condition of achieving permanent status as a police officer in any municipal department, the same considerations apply in non-civil service municipalities. There is no express statutory authorization for imposition of a working test period for police officers in non-civil service municipalities. However, municipalities are authorized to establish by ordinance a police department or force and to adopt rules and regulations for its government. N.J.S.A. 40A:14-118. Because the Legislature delegated to municipalities the power to appoint, manage and control their police departments or forces, it also delegated by implication the power to adopt such ordinance provisions and rules and regulations as might be reasonably necessary to accomplish the legislative purpose. Cammarata v. Essex County Park Comm'n, 46 N.J.Super. 262, 270, 134 A.2d 604 (App.Div.1957), aff'd, 26 N.J. 404, 140 A.2d 397 (1958). Any provision reasonably calculated to further or accomplish the legislative object would come within the delegated power. Ibid. It is not necessary that the Legislature spell out the specific terms that should be included in the rules and regulations of each local department or force. Ibid. The requirement that a new officer serve a probationary period before becoming a permanent member of the department or force is entirely reasonable and proper. Id. at 271, 134 A.2d 604. The requirement
is designed to accomplish the legislative mandate for the appointment, control and management of the members of the police department and for the securing of proper discipline and efficiency among them; . . . the power to provide for probationary service is an incidental power fairly and reasonably necessary and appropriate to make effective the express authority granted by the statute.
[Ibid.]
We conclude that non-civil service municipalities may lawfully prescribe a probationary period of reasonable duration for new police officers, to be served after completion of the police training course, but before being granted permanent status. There is nothing unreasonable about the one-year duration Waterford Township has prescribed, which comports with that set by the Legislature and Merit System Board for police officers in civil service municipalities.
Indeed, the PTA recognizes these principles by defining "permanent appointment" as "an appointment having permanent status as a police officer in a law enforcement unit as prescribed by Title 11A of the New Jersey Statutes, Merit System Board Rules and Regulations, or of any other law *730 of this State, municipal ordinance, or rules and regulations adopted thereunder." N.J.S.A. 52:17B-67. N.J.S.A. 52:17B-69.2 must be read in conjunction with that definition, which is part of the same Act. Eligibility for "appointment as a permanent full-time member of a police department or force" means eligibility as provided under the civil service laws and regulations or under a lawfully adopted ordinance in a non-civil service municipality. See Borger, supra, 178 N.J.Super. at 301, 428 A.2d 958 (The PTA's statutory requirements must "be read in pari materia with municipal and Civil Service statutes relating to police employees."). To interpret N.J.S.A. 52:17B-69.2 otherwise would strip the PTA's definition of permanent appointment of any meaning or effect. The Legislature could not have intended such a result.
Interpreted in the manner urged by plaintiff and accepted by the trial court, N.J.S.A. 52:17B-69.2 must be deemed to have impliedly repealed the entire body of civil service law and regulations and the law applicable to non-civil service municipalities pertaining to probationary or working test periods for on-the-job evaluations. Implied repealers are strongly disfavored, and every reasonable construction should be applied to avoid finding an implied repealer. Twp. of Mahwah v. Bergen County Bd. of Taxation, 98 N.J. 268, 281, 486 A.2d 818, cert. denied, 471 U.S. 1136, 105 S.Ct. 2677, 86 L.Ed.2d 696 (1985). "A repeal by implication requires clear and compelling evidence of the legislative intent, and such intent must be free from reasonable doubt." Id. at 280, 486 A.2d 818.
The language of the 1998 amendment does not express an intent to repeal the provisions we have discussed. Indeed, the PTA expresses the opposite: "Except as expressly provided in this act, nothing herein contained shall be deemed to limit the powers, rights, duties or responsibilities of municipal or county governments, nor to affect provisions of Title 11 of the Revised Statutes." N.J.S.A. 52:17B-72.
The legislative history also lacks any such suggestion. The original bill as introduced did not contain the provision that is now N.J.S.A. 52:17B-69.2. A. 2651, 208th Leg., Reg. Sess. (N.J. 1998); S. 1504, 208th Leg., Reg. Sess. (N.J. 1998). The Sponsors' Statement explained the new authorized method for enrollment in a police training course, and concluded: "The provisions of this bill would codify the `alternate route' pilot program conducted by the Police Training Commission. That program, which expires in December 1998, has provided municipalities with high quality police officers at a substantial savings in training costs." Sponsors' Statement to A. 2651 and S. 1504. The new section, now N.J.S.A. 52:17B-69.2, was added by the Assembly Law and Public Safety Committee in response to the Policemen's Benevolent Association's concerns that the alternate route program was "an attempt to institute part-time policing and . . . to avoid civil service requirements." Memorandum from John J. Farmer, Jr., Chief Counsel, Office of the Governor, to Christine Todd Whitman, Governor (Dec. 22, 1998); see also Assembly Comm. Substitute for A. 2651, Dec. 3, 1998. The Statement to the Assembly Committee Substitute summarized the mechanics of the alternate route as contrasted with the traditional method; it made no mention of the newly added section that is now central to this appeal. See Assembly Law and Pub. Safety Comm., Statement to Assembly Comm. Substitute for A. 2651, Dec. 3, 1998.
Plaintiff argues that the Sponsors' Statement language we quoted, recognizing that the purpose of the alternate route *731 pilot program is to provide high quality officers at substantial savings to municipalities, is evidence that the Legislature intended to establish a trade-off by enacting N.J.S.A. 52:17B-69.2. The argument is that a municipality could choose to save the costs it would incur in the traditional method, but, as a consequence, the alternate route officer it hires will have tenure from the date of hire; from the alternate route officer's perspective, he or she would incur the training costs, but would receive in return immediate tenure when hired. The trial court accepted this proposition.
The proposition is untenable for two reasons. First, the quoted language in the Sponsors' Statement accompanied the original version of the bill, before it was amended to include what is now N.J.S.A. 52:17B-69.2. Therefore, the statement could not have referred to N.J.S.A. 52:17B-69.2. Further, we read the Sponsors' Statement as an expression of the mutual benefit to municipalities and individuals seeking positions as local police officers. Individuals, unable to get hired under the traditional method, can make themselves more attractive and marketable candidates by pursuing the alternate route. Municipalities can save money and need not be concerned with whether the person they hire will successfully complete, while on their payroll and at their expense, the required police training course. This is the trade-off. It has nothing to do with another component in the path to permanent status, evaluation of on-the-job conduct.
We reject the notion that the Legislature silently intended, by enacting N.J.S.A. 52:17B-69.2, to repeal longstanding laws and regulations allowing on-the-job performance evaluation of police officers before they can achieve permanent status. By its nature, police work is highly specialized, complex, multi-faceted, and, of course, extremely important. An officer's demeanor and comportment; interaction with fellow-officers, superiors and members of the public; reaction and response to real-life situations, often highly charged and dangerous; qualities of honesty, candor, integrity, positive attitude, and the like; reliability in maintaining confidentiality; and many other such characteristics can only be evaluated on-the-job. It would be anomalous, indeed, to require a working test period for many public employees in far less demanding, sensitive and complex positions, and not for police officers. In our view, N.J.S.A. 52:17B-69.2 is nothing more than an expression that alternate route individuals may only be hired on a path towards permanent status, which will be granted upon successful completion of their working test period or probationary term, and not hired for limited duration positions as part-time or temporary officers.
The orders granting summary judgment to plaintiff and denying the Township's motion for summary judgment are reversed.
NOTES
[1] The ordinance, No. 2004-29, submitted by the Township to the trial court, and thus part of the record, was introduced on December 15, 2004 and finally adopted on January 26, 2005. Ordinance No. 2004-29 is a recodification of Chapter 50 of the Township Code, entitled "POLICE DEPARTMENT." It authorizes the promulgation of rules and regulations. The record contains only the cover and one page of the rules and regulations, neither of which bear a date of adoption. Plaintiff did not argue in the trial court that the ordinance or rules and regulations could not apply to him because they were adopted after he was hired. He raises that argument on appeal with respect to the ordinance, without mentioning the rules and regulations. The argument is not properly before us and we will not consider it. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973). We infer that the predecessor to Ordinance No. 2004-29 contained a similar provision pertaining to probationary or temporary appointments and that the cognate rule was also in effect when plaintiff was hired.
[2] We granted the Township's motion for a stay of the reinstatement order pending appeal.