520

ditiously thereafter in resolving that issue. Jurisdiction is retained.

NORTH ARLINGTON PBA # 95, PLAINTIFF–APPELLANT, v.
BOROUGH OF NORTH ARLINGTON,
DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 28, 1987—Decided December 15, 1987.

*Paul L. Kleinbaum* argued the cause for appellant (*Zazzali, Zazzali & Kroll,* attorneys).

*Edwin C. Eastwood, Jr.,* argued the cause for respondent (*Marc E. Berger,* on the brief).

*Deborah Klein Davis,* Deputy Attorney General, argued the cause for *amicus curiae* Board of Trustees, Police and Firemen's Retirement System (*W. Cary Edwards,* Attorney General of New Jersey, attorney).

Before Judges KING, GAULKIN and GRUCCIO.

The opinion of the court was delivered by

GRUCCIO, J.A.D.

Plaintiff North Arlington PBA # 95 appeals from an adverse determination in its challenge to the facial validity of defendant Borough of North Arlington's ordinance governing elective retirement. Plaintiff contends before us, as it did before the Law Division, that the ordinance is preempted by State law. At our request, the Attorney General filed an *amicus* brief in which he urged that the borough's ordinance, when properly construed, is not preempted by the laws and regulations governing the police and firemen's retirement systems. We agree with his position and affirm.

On August 13, 1985, defendant adopted Ordinance # 1342 which states:

Be it ordained by the Mayor and Council of the Borough of North Arlington, Bergen County, State of New Jersey that once a police officer of any rank has elected to take his retirement and to accept any of the benefits, including but not limited to, terminal leave, accumulated sicktime, vacation time or personal days, then and in that event he cannot change his mind and seek to return to active duty nor can he withdraw his application for retirement.

Plaintiff, the majority representative of North Arlington's police officers, is a party to the collective bargaining agreement with defendant. Its police officers participate in the Police and Firemen's Retirement System (PFRS), *N.J.S.A.* 43:16A–1, *et seq.*

Plaintiff contends that Ordinance # 1342 is preempted by the extensive statutory and regulatory scheme contained within

*N.J.S.A.* 43:16A–1, *et seq.* and *N.J.A.C.* 17:4–1.1, *et seq.* Pre-emption is "a judicially created principle based on the proposition that a municipality, which is an agent of the State, cannot act contrary to the State." *Mack Paramus Co. v. Paramus,* 103 *N.J.* 564, 573 (1986), *quoting Overlook Terrace Management Corp. v. Rent Control Bd. of W. New York,* 71 *N.J.* 451, 461 (1976). The applicability of preemption can be determined based on the consideration of the following questions:

1. Does the ordinance conflict with state law, either because of conflicting policies or operational effect (that is, does the ordinance forbid what the Legislature has permitted or does the ordinance permit what the Legislature has forbidden)?

2. Was the state law intended, expressly or impliedly, to be exclusive in the field?

3. Does the subject matter reflect a need for uniformity?

4. Is the state scheme so pervasive or comprehensive that it precludes coexistence of municipal regulation?

5. Does the ordinance stand "as an obstacle to the accomplishment and execution of the full purposes and objectives" of the Legislature? [*Overlook Terrace Management Corp., supra,* 71 *N.J.* at 461–462; citations omitted].

It is clear to us that the Legislature has enacted a comprehensive statutory scheme governing the pension rights of police and fire persons. The Police and Firemen's Retirement System (PFRS) was established in 1944. *N.J.S.A.* 43:16A–1, *et seq.* Those persons appointed after June 1944 in municipalities in which local police pension funds existed or in which the system was adopted by the local electorate are required to become members of PFRS. *N.J.S.A.* 43:16A–3. PFRS is administered by a nine-member board of trustees which promulgates rules and regulations governing the retirement system. *N.J.S.A.* 43:16A–13(7).

In *Fair Lawn Ed. Assn. v. Fair Lawn Bd. of Ed.,* 79 *N.J.* 574 (1979), the Supreme Court held that the matter of public employee pensions is one which has been extensively and comprehensively regulated by the Legislature and that municipal action in the pension area is prohibited because of the effect that such action may have upon the actuarial assumptions upon which the pension funds are based; thus, pension funds are a non-negotiable item. *See State v. State Supervisory Employ-*

*ees Ass'n.*, 78 *N.J.* 54, 83 (1978). Here, however, we find no direct or indirect impact on employee pensions in the ordinance in question. Rather, the ordinance addresses the right of a police officer to change a retirement decision once the officer elects to retire and advises the Borough. It does not attempt to prevent his withdrawal of that decision or to in any manner affect his continuance in the system with any other employer. Rather, it addresses the matter of the orderly process of retirement of North Arlington's employees and the recruitment and employment of new employees.

While it is common practice that retiring police officers or fire fighters notify the municipality of their intention to retire, nevertheless, the last day of employment may be months or even years after notice is given. This is so when one considers the accumulated terminal leave, accrued vacation and sicktime and personal days which the prospective retirees may use before the actual date they leave employment. That was the exact case in *Marino v. Edison Tp.*, Docket No. A–5508–83T7, an unreported decision by this court relied upon by the trial judge. *Marino* presented a situation in which a police captain advised the mayor that he was going to retire and requested terminal leave from July 1, 1983, to December 31, 1984, at which time his PFRS pension would begin. Marino remained off the job until June 4, 1984, and then attempted to return to work.

Ordinance # 1342 allows the municipality to put its house in order and pursue the employment of new personnel in order to protect the public without having that process interrupted or interfered with by a change of mind of the retiring officer. It is imperative that all municipalities, both large and small, not be understaffed and that they move rapidly, in the public interest, to replenish the ranks of their police forces. A retiring officer may have considered retirement to seek police work in another department in or out of the State, to seek other public or private employment, or to just plain retire. Regardless of the reason, no municipality should be compelled to wait

for months or years to bring its force up to the necessary strength.

This ordinance does not in any manner conflict with *N.J.A.C.* 17:4-6.2(a), which provides:

> A member shall have the right to withdraw, cancel or change an application for retirement at any time before his retirement allowance becomes due and payable; *thereafter, the retirement shall stand as approved by the Board.* (Emphasis supplied).

Unquestionably, the applicant for pension may withdraw, cancel or change the application for retirement; he can accept other employment with another municipality or governmental agency or not; he may simply not resume working. The options are unlimited; what is limited by the ordinance is his right to return to employment in the North Arlington Police Department after voluntary retirement was elected.

Indeed, as the *amicus* brief aptly points out, the position of North Arlington is consistent with Civil Service law, which also does not require an employer to permit its employees to rescind their decision to terminate employment. *N.J.A.C.* 4:1-16.12(c) provides:

> A request to rescind the resignation prior to its effective date may be consented to by the appointing authority and approved by the Civil Service Department.

Thus, we see that just as the Civil Service regulations concerning resignation do not conflict with PFRS, North Arlington's ordinance is also compatible with PFRS.

We find no inconsistency with our opinion here and our unreported decision in *Marino,* a decision upon which, as we have indicated, the trial judge partially based his opinion. In that case, the mayor advised Marino that once his request for retirement was received and approved by the Township Director of Public Safety, it was irrevocable. Marino filed an action in the Superior Court, Law Division, seeking a return to employment, which request was denied. There, we found that Marino had submitted his terminal leave request in accordance with the terms of the applicable collective bargaining agreement, which was silent as to what would occur if a police officer changed his mind. We further observed that "[n]o statute or

municipal ordinance has been called to our attention and our independent research has disclosed none which prohibits [a police officer] from changing his mind where elective retirement is involved." Since there was no evidence that Marino acted in bad faith or that the Township had detrimentally relied upon Marino's conduct, we concluded that Marino should be returned to employment.

We indicated that an elective retirement could be withdrawn prior to its effective date "unless prohibited by contract, ordinance, statute or equitable estoppel." North Arlington's Ordinance # 1342 apparently was enacted in response to our decision in *Marino*, thus ensuring that upon approval of terminal leave pending retirement, a police officer would not be permitted to change his mind and attempt to rescind the retirement application once terminal leave has begun. The ordinance, as we have said, in no way impacts upon the police officer's right to file, withdraw or change his application for a PFRS pension. We find *Marino* in no manner inconsistent with our holding here.

Thus, Ordinance # 1342 is neither in conflict with nor preempted by the PFRS statutes and regulations.

Affirmed.