908 A.2d 846 (2006)
IN RE REFERENDUM PETITION TO REPEAL ORDINANCE 04-75.
No. A-2009-04T1
Superior Court of New Jersey, Appellate Division.
Submitted February 7, 2006
Decided October 25, 2006
Before Judges Kestin, Lefelt and Hoens.
Katz & Dougherty, attorneys for appellants Russell Derricott and Petitioners Committee (George T. Dougherty, on the brief).
Hill Wallack, attorneys for respondents Mayor and City Council of the City of Trenton (Rocky L. Peterson, of counsel; Mr. Peterson and Dakar R. Ross, on the brief).
The opinion of the court was delivered by
KESTIN, P.J.A.D.
The question posed in this matter involves the operational validity of petitions seeking the rejection by referendum, pursuant to N.J.S.A. 40:69A-185, of Ordinance 04-75 adopted by the Trenton City Council, establishing a table of organization for the police department. The litigation began with a declaratory judgment complaint filed by the Mayor and Council (collectively, plaintiffs), challenging a referendum petition that had been certified as complying with the requirements of N.J.S.A. 40:69A-185 and as a result of which the municipal clerk had ordered the question placed on the ballot. The Law Division held a portion of Ordinance 04-75 "not subject to the referendum provisions set forth in N.J.S.A. 40:69A-185[,]" and another portion of the same ordinance "subject to ratification by the voters as set forth in N.J.S.A. 40A:9-165." The committee of citizens that sponsored the petitions and a taxpayer member (collectively, the Committee) appeal from the first of these rulings. In addition to challenging the trial court's ruling, the Committee also argues that the ordinance is facially invalid.
The section of the ordinance the trial court held not subject to referendum, involving a new "table of organization" for Trenton's Police Department (Department), effectively eliminated the position of deputy chief of police, resulting in the layoff or demotion of three individuals; and restructured the ranks of the Department, allowing for a minimum and maximum number of available positions within those ranks, i.e., staffing ranges. The section of the ordinance the trial court held to be subject to referendum approval dealt with a salary increase for the position of Chief of Administrative Services.
We hold the trial court erred in its ruling that a portion of the ordinance is not subject to referendum. Accordingly, we reverse and remand for the entry of an order and judgment containing appropriate provisions for the scheduling of the required referendum.
In order to establish the context of the questions before us, we briefly review the history of Trenton's police department ordinances. Before June 1999, subsection 2-9.2 of Trenton's ordinances established a Division of Police within the City's Department of Public Safety. In addition to the Chief of Police, there were to be three deputy chiefs, ten captains, twenty-five lieutenants, twenty-four sergeants, and other officers as needed. The Division of Police was to be organized according to a table of organization prescribed by the Chief of Police with the approval of the Director of Public Safety and the Mayor.
At a special election on June 22, 1999, the voters adopted ordinance 99-52 by referendum. That ordinance, inter alia, amended section 2-9 of the Revised General Ordinances (Public Safety), eliminating the Chief of Police position and the Department of Public Safety, and creating a separate police department with a civilian police director to be appointed by the mayor. Subsection 2-9.1 as amended established a police department with the Police Director at its head. Subsection 2-9.2 provided that the Police Director was responsible for the day-to-day operations of the police department with the authority to:
a. Organize the department according to such table of organization as (s)he shall deem necessary and appropriate;
b. Adopt and promulgate such policies as are necessary and appropriate for the divisions within the department;
c. Adopt and promulgate rules and regulations for the government of the divisions under his/her supervision and for the discipline of their members;
d. Prescribe the duties and assignments of all subordinates and other personnel; and e. Adopt and promulgate standard operating procedures for the efficient operation of the department.
Ordinance 99-52 also provided that "[t]he current text of Section 2.9 (Public Safety) is hereby repealed, but nothing in this ordinance shall be deemed to impinge on the ability of the Mayor and the City Council to adopt any future ordinance giving new powers and duties not inconsistent with this ordinance." In 2003, subsections 2-9.1 and 2-9.2 were redesignated as Sections 2-56 and 2-57, respectively.
On January 29, 2004, the Police Director issued General Order 2004-03, which "set forth a proposed reorganizational plan for the City of Trenton Police Department and a table of organization that included the elimination of three deputy chief positions." In a letter dated March 24, 2004 to the State Department of Personnel, Trenton's Personnel Officer explained that the proposal to abolish the rank of deputy police chief and to lay off the three existing deputy police chiefs was necessary in order to "increase the efficiency of the Police Department" by "eliminating duplicative layers of supervision." The Department of Personnel approved Trenton's "layoff plan" by letter dated June 18, 2004.
In the summer of 2004, the three deputy police chiefs were laid off from their positions and offered demotions to the rank of police captain. They chose to resign rather than accept the demotions "so that," as found subsequently by the trial court, "their pensions [were] not affected." They also filed a civil action for injunctive and declaratory relief against the Mayor and Council and the Police Director challenging the reorganization plan.
In that prior proceeding, the trial court ruled, in a written opinion and order, that the Police Director had the authority under N.J.S.A. 11A:8-1 to institute the layoffs and reorganize the police department, but that he did not have the authority to "create or eliminate police department officer positions without City Council action." The judge held that subsection 2-57(a), which gave the Police Director the authority to organize the department, was invalid on its face "because it fails to establish a line of authority and fails to specify the type and number of positions in that line of authority." The judge ruled that the Police Director could not implement the layoffs or demotions until the City Council adopted a new ordinance creating a modified organizational structure and setting forth new lines of authority.
Thereafter, the City Council enacted Ordinance 04-75, at issue in this appeal. Ordinance 04-75 repealed the former section 2-56 and replaced it with the following:
§ 2-56. Establishment; Police Director; Stipend of Director and Chief of Administrative Services.
* * *
B. Within the Department of Police, in addition to the Police Director and the Chief of Administrative Services, there shall be the following ranks and number of positions per rank: (1) Captains8 to 13, (2) Lieutenants25 to 30, (3) Sergeants35 to 45 and (4) Patrol Officers270 to 290.
The trial court in this matter characterized that action:
Upon adoption, [the ordinance would] reduce the number of deputy police chiefs by three and increase the number of police captains by three, with the three affected police chiefs or deputies receiving a reduction in rank and salary.
The court noted, as well, that the newly adopted ordinance also established a salary increase for the Chief of Administrative Services.
The court ruled:
City Ordinance 04-75, as it pertains to Section 2, §2-57 is not subject to the referendum provisions set forth in N.J.S.A. 40:69A-185. City Ordinance 04-75, as it pertains to Section 1, §2-56(D), is subject to ratification by the voters as set forth in N.J.S.A. 40A:9-165.
Under that determination, the provision dealing with the elimination of the deputy police chief position and creating ranges in numbers of positions for other ranks was valid without submission to the voters for approval despite the referendum petitions that had been filed, but the provision dealing with the salary increase for the Chief of Administrative Services was to be submitted for voter approval.
The Committee argues that the trial court erred in the portion of its ruling insulating a portion of the ordinance from voter approval or disapproval in a referendum. The Committee contends that the court failed to follow definitive caselaw standards and erred in its understanding and characterization of the ordinance.
The trial court's declaratory judgment was a ruling of law based on its interpretation of N.J.S.A. 40:69A-185 and the standards that statute sets for determining which ordinances are subject to referendum approval. Thus, we are required to apply a de novo standard of review. A trial court's legal rulings are not entitled to deference on appeal. Manalapan Realty, L.P. v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995).
"The political power of the people of the State of New Jersey does not include the right to local initiative or referendum unless that right is granted by statute." Millennium Towers Urban Renewal Ltd. Liab. Co. v. Mun. Council of the City of Jersey City, 343 N.J. Super. 367, 373 (Law Div. 2001). "Where the right of referendum is statutorily granted, however, the grant is to be liberally construed `to promote, where appropriate, its beneficial effects.'" D'Ercole v. Mayor and Council of the Borough of Norwood, 198 N.J. Super. 531, 543 (App. Div. 1984)(quoting Retz v. Mayor and Council Twp. of Saddle Brook, 69 N.J. 563, 571 (1976)).
Within the rule of liberal construction, however, "it was not the intent for such provisions to grant unlimited and unqualified rights to citizens to challenge the acts of local municipal governments." Millennium Towers, supra, 343 N.J. Super. at 373. The Supreme Court has recognized the "judicial dilemma" inherent in such determinations:
In many situations it is difficult to determine how far the limitations [on initiative and referendum] should go. The courts must draw the line in these situations and in doing so must balance two intereststhe protection of city government from harassment as against the benefits of direct legislation by the people.
[Tumpson v. Farina, 120 N.J. 55, 59 (1990)(quoting Cuprowski v. City of Jersey City, 101 N.J. Super. 15, 24-25 (Law Div.), aff'd o.b., 103 N.J. Super. 217 (App. Div.), certif. denied, 53 N.J. 80 (1968)).]
N.J.S.A. 40:69A-185 grants voters in a Faulkner Act municipality, such as Trenton, "the power to approve or reject at the polls . . . any ordinance passed by the council, against which a referendum petition has been filed. . . ." However, the Court has recognized that the "any ordinance" language in that statute does not mean "all ordinances." Tumpson v. Farina, supra, 120 N.J. at 57. Cuprowski, supra, 101 N.J. Super. at 23, explains that "the Legislature was referring to ordinances of a legislative nature and did not intend to include resolutions or ordinances of an executive or administrative nature."
The plaintiffs in Cuprowski had filed a complaint in lieu of prerogative writs after the municipal clerk refused to accept their referendum petition challenging Jersey City's budget. In ruling that the Legislature intended local budget ordinances to be exempt from referendum provisions, the court described the tests for determining whether municipal actions were legislative or administrative as follows: Matters which are of a permanent or general character are considered to be legislative while those which are temporary in operation and effect are deemed administrative. Acts which are classified as administrative are those which result from governmental powers properly assigned to the executive department and necessary to carry out legislative policies and purposes already declared either by the legislative municipal body, or devolved upon it by the law of the state.
[Ibid.]
The Committee's main argument in the instant appeal is that the trial court erred in rejecting the rationale of Menendez v. City of Union City, 211 N.J. Super. 169 (App. Div. 1986), and adopting the rationale of D'Ercole, supra, 198 N.J. Super. 531. In discussing those two cases, another trial court recognized that "[s]ubsequent to the court's decision in Cuprowski, the Appellate Division ha[d] rendered two diametrically opposed opinions further defining the difference between legislative and administrative acts." Millennium Towers, supra, 343 N.J. Super. at 374-75.
We view the apparent conflict in rationale between Menendez and D'Ercole to be resolvable by the application of a basic default principle to be found within the four corners of Cuprowski and Tumpson.
In D'Ercole, the plaintiff challenged an ordinance that authorized the municipality to enter into a twenty-year lease of a firehouse owned by the volunteer fire department. Based on undisputed facts, we held that the ordinance was not legislative in character because it was "the embodiment of an executive or administrative decision to resolve a part of [the duty of providing fire protection to the community] by a lease for a fixed term of years, payable as part of the annual budget." D'Ercole, supra, 198 N.J. Super. at 544. For that reason, we held the ordinance was not subject to referendum. Id. at 546.
In Menendez, we validated the plaintiffs' petition for a referendum to challenge an ordinance increasing the number of fire captains from twenty to twenty-eight and creating a new fire protection subcode official. We declined to construe Cuprowski and D'Ercole as broad precedents justifying the barring of a referendum petition. See Menendez, supra, 211 N.J. Super. at 171. We expressed "disagreement" with the D'Ercole result seeing it to be "contrary to the legislative policy of encouraging citizen interest and participation in local government by provisions, which should be liberally construed, for the right of referendum." Id. at 172. Instead, we ruled:
The proper distinction between legislative ordinances subject to referendum and administrative ordinances not subject to referendum, apart from specific statutory exceptions, is that implicit in the Cuprowski dictum supra. When a municipal governing body has latitude within its discretion in adopting the specific provisions of an ordinance, its enactment is legislative and subject to referendum, even though its authority to legislate on that subject has been delegated to it by State law. When a municipal governing body is merely complying with and putting into execution a State or local legislative mandate in adopting an ordinance, in effect exercising a ministerial function, its enactment is administrative and not subject to referendum.
[Ibid.]
Since the number of fire captains was not mandated by State or local law, we determined that Union City was exercising its delegated legislative authority and, we ruled that "citizen review . . . by referendum should not be barred." Id. at 172-73.
The Committee argues that Menendez should have been treated as binding precedent because it dealt with identical facts and "nearly identical enabling statutes," except that it dealt with a fire department instead of a police department. Plaintiffs counter that Menendez is distinguishable because "the referendum action arose in a Walsh Act municipality wherein the Board of Commissioners, under N.J.S.A. 40:72-4, exclusively held all executive, administrative and legislative control over the various municipal departments" but, in Trenton, a Faulkner Act municipality, the governing body "is not charged with the exclusive power to unilaterally `legislate' on matters concerning the administrative and executive structure of the city's police department." On the basis of Menendez, supra, 211 N.J. Super. 169, we disagree with the trial court's ultimate decision that the portion of Ordinance 04-75 that established the table of organization for the police department was not subject to challenge by referendum.
The Trenton police department was created by ordinance pursuant to N.J.S.A. 40:47-1, repealed in 1971 and replaced by N.J.S.A. 40A:14-118. See Jansco v. Waldron, 70 N.J. 320, 323-24 (1976). The current enabling legislation provides:
The governing body of any municipality, by ordinance, may create and establish, as an executive and enforcement function of municipal government, a police force, . . . and provide for the maintenance, regulation and control thereof. Any such ordinance shall, in a manner consistent with the form of government adopted by the municipality and with general law, provide for a line of authority relating to the police function and for the adoption and promulgation by the appropriate authority of rules and regulations for the government of the force and for the discipline of its members. The ordinance may provide for the appointment of a chief of police and such members, officers and personnel as shall be deemed necessary, the determination of their terms of office, the fixing of their compensation and the prescription of their powers, functions and duties, all as the governing body shall deem necessary for the effective government of the force. Any such ordinance, or rules and regulations, shall provide that the chief of police, if such position is established, shall be the head of the police force and that he shall be directly responsible to the appropriate authority for the efficiency and routine day to day operations thereof, and that he shall, pursuant to policies established by the appropriate authority:
* * *
c. Prescribe the duties and assignments of all subordinates and other personnel;
* * *
As used in this section, "appropriate authority" means the mayor, manager, or such other appropriate executive or administrative officer, such as a full-time director of public safety, or the governing body or any designated committee or member thereof, or any municipal board or commission established by ordinance for such purposes, as shall be provided by ordinance in a manner consistent with the degree of separation of executive and administrative powers from the legislative powers provided for in the charter or form of government either adopted by the municipality or under which the governing body operates.
[N.J.S.A. 40A:14-118.]
With Ordinance 99-52, the City created the police department, as authorized by N.J.S.A. 40A:14-118, and the ordinance was approved by the voters. Yet, that ordinance did not detail the specifics of the number and type of police positions in the department, as its predecessor provision had done. In the prior proceeding challenging the Police Director's reorganization effort, the trial court had ruled that the City Council could not implement the layoffs of the three deputy police chiefs "until such time as City Council creates a new ordinance setting forth a new line of authority." Accordingly, Ordinance 04-75 was enacted. We regard as error the trial court's determination in this case that Ordinance 04-75 was not subject to referendum on the "authorization given to the Police Director by Ordinance 99-52" because the judge in the earlier challenge had ruled that provision to be invalid on its face. With the earlier determination that the predecessor ordinance was invalid, the Police Director had no prior authority to reorganize the department when Ordinance 04-75 was enacted.
There is no question that, under N.J.S.A. 40A:14-118, the City Council had the authority to enact an ordinance creating a table of organization for the police department, but "[w]hen a municipal governing body has latitude within its discretion in adopting the specific provisions of an ordinance, its enactment is legislative and subject to referendum, even though its authority to legislate on that subject has been delegated to it by State law." Menendez, supra, 211 N.J. Super. at 172. We reject plaintiffs' argument that Menendez is distinguishable simply because the municipality there derived its authority from the Walsh Act, as distinguished from Trenton in the instant case, which is a Faulkner Act municipality. The enabling statutes for the creation of police departments, N.J.S.A. 40A:14-118, and fire departments, N.J.S.A. 40A:14-7, apply to both types of government and do not change the legislative nature of the act in creating a table of organization and lines of authority.
Ordinance 99-52, as renumbered and codified, was declared invalid because it did not establish the appropriate lines of authority within the police department by specifying the number and type of police positions created by ordinance. Although Ordinance 04-75 corrected that omission by setting ranges for the numbers of positions within each rank, that enactment cannot be said to have been merely an implementation of a prior ordinance when the prior enactment had been invalidated by a court. Therefore, the situation here is inherently parallel to that in Menendez. Setting the number of officers within each rank of the police department has not been mandated by any State or local law and is, therefore subject to citizen review.
The Committee contends also, and more directly, that the trial court erred in failing to cite or apply Tumpson, supra, 240 N.J. Super. at 346, which, the Committee argues, had "implicitly" disapproved of the "expansive application of Cuprowski's `administrative' concept." We need not opine on the impact of Tumpson in the matter at hand. It suffices that, in situations where close questions are presented, the default rule in deciding where the ultimate decision-making authority on the municipal level lies is to be found in the Legislature's declaration of policy that that power rests with the people. See Tumpson, supra, 240 N.J. Super. at 350-51; Menendez, supra, 211 N.J. Super. at 172. To the extent the courts have articulated a distinction between the treatment of legislative questions and administrative questions so as to bring order and some predictability to questions presented, if it is difficult to determine, in a particular situation, on which side of the dividing line a certain governmental exercise falls, the legislatively declared policy preference for public participation must apply to favor the referendum mechanism.
Within the context of our determination that the reorganization of the police department was a legislative act subject to approval in a referendum, we reject the Committee's related argument that the use of ranges to set the maximum number of officers within each rank, as established by the table of organization embodied in the enactment, was a feature that rendered Ordinance 04-75 facially invalid. The Committee cites N.J.S.A. 40A:14-118 and Reuter v. Borough Council of the Borough of Fort Lee, 328 N.J. Super. 547 (App. Div. 2000), aff'd in part, rev'd in part, 167 N.J. 38 (2001), as authorities for the position it advances.
In Reuter, we held that a municipal office or position, if not created by statute, must be created by ordinance and not by resolution. "[B]ecause the creation of offices and positions involves an increase of the financial burden of local government, the power is exercisable only by ordinance, a deliberative process requiring notice to the public." Id. at 556 (quoting Handlon v. Town of Belleville, 4 N.J. 99, 108 (1950)). We also determined that the ordinance must specify the number of positions to be filled through the appointment process so that the public can be appropriately informed about the cost of the new positions. Id. at 557. We did not, however, state that the number of positions had to be a fixed number. We noted, instead, that "municipal governing bodies have broad discretion in the administration of their respective police departments." Id. at 560. Similarly, in Nolan v. Witkowski, 56 N.J. Super. 480, 496 (App. Div. 1959), aff'd, 32 N.J. 426 (1960), we held that municipal offices and positions must be created by ordinance because "[t]he salutary purposes of the provisions which compel the use of an ordinance are defeated if the public is not informed of at least the approximate salary attached to each office and the maximum number of officers who will be in receipt thereof."
By prescribing a range of positions for each rank within the police department, Ordinance 04-75 appropriately informed the public of the maximum number of officers within each rank, comporting with the principle of Nolan. Under the supervision of the Mayor, the Police Director will then organize the department under those guidelines, if the ordinance is approved by the voters.
Falcone v. DeFuria, 199 N.J. Super. 549 (Law Div. 1984), aff'd o.b., 199 N.J. Super. 554 (App. Div. 1985), aff'd, 103 N.J. 219 (1986), also cited by the Committee to support its position that the range of positions set by Ordinance 04-75 is an "excessive delegation of administrative authority," is unavailing. There, a sharing of the power to make a permanent appointment of a detective as a superior officer of the police force between the governing body and the chief of police was seen as a permissible and wise policy "to preclude favoritism by the governing body or the Chief." Id. at 554. The court viewed N.J.S.A. 40A:14-118 as evidencing a clear "legislative intent to create a system with familiar checks and balances to avoid the tyranny of absolute power." Id. at 553. Here, Ordinance 04-75 confers upon the police director the authority to "[o]rganize the department according to such table of organization as (s)he shall deem necessary and appropriate," but this authority is "[s]ubject to the supervision of the Mayor." The legislative design for checks and balances has thus been satisfied.
For the foregoing reasons, the trial court's judgment is affirmed in part and reversed in part. The matter is remanded for the entry of an order and judgment with appropriate provision for the scheduling of a referendum.