975 A.2d 1006 (2009)
409 N.J. Super. 13
Larry LOIGMAN, Plaintiff-Respondent,
v.
TOWNSHIP COMMITTEE OF the TOWNSHIP OF MIDDLETOWN AND TOWNSHIP OF MIDDLETOWN, Defendants-Appellants, and
Middletown Police Benevolent Society, Middletown Superior Officers Association, Defendants/Interveners-Respondents, and
Lt. Best, Sgt. Shaffery, Sgt. Dollinger, Sgt. Maguire, Sgt. Deickmann, Jr., Sgt. Terefenko, Defendants/Interveners,
Lt. Weber and Deputy Chief Hannafey, Defendants.
DOCKET NO. A-2180-07T2.
Superior Court of New Jersey, Appellate Division.
Argued March 16, 2009.
Decided August 5, 2009.
*1007 Bernard M. Reilly, Red Bank, argued the cause for appellant (Dowd & Reilly, attorneys; Mr. Reilly, on the brief).
Larry S. Loigman, respondent, argued the cause pro se.
Klatsky, Sciarrabone & DeFillippo, Red Bank, for respondent Middletown Police Benevolent Society (David J. DeFillippo, on the letter of non-participation).
Respondent Middletown Superior Officers Association have not filed a brief.
Before Judges LISA, SAPP-PETERSON and ALVAREZ.
The opinion of the court was delivered by
*1008 LISA, P.J.A.D.
The dispositive issue in this appeal concerns the validity of the Middletown Township (Township) ordinance creating a police department. The trial court held that the ordinance did not comply with N.J.S.A. 40A:14-118, as interpreted in Reuter v. Borough Council of Fort Lee, 328 N.J.Super. 547, 554, 746 A.2d 511 (App.Div.2000), aff'd in part, rev'd in part, 167 N.J. 38, 768 A.2d 769 (2001), because it did not contain a description of the duties of the various ranks or an organizational chart specifying a line of authority within the police department. We disagree and reverse.
In Reuter, the Supreme Court affirmed this court's decision that "the type and number of police positions [must be] created by ordinance." Reuter, supra, 167 N.J. at 41, 768 A.2d 769. The underlying rationale for that determination rested primarily on the fact that, because of the importance and cost of police positions, the positions should be created only through the formality and public involvement attendant to the adoption of an ordinance, as opposed to merely a resolution, and to inform the public of the approximate cost, based upon the maximum number of officers within each rank. Reuter, supra, 328 N.J.Super. at 553, 746 A.2d 511.
In the aftermath of the Reuter decisions, the Township amended its police ordinance to specify the order of rank and maximum number of officers within each rank. As amended, the ordinance provided for no more than the following within each rank: chief (1), deputy chief (2), captain (1), lieutenant (10), sergeant (13), patrol officer (81).
In March 2006, the Township again amended the ordinance. The primary purpose of the amendment was to add to the "Organizational Structure" section of the ordinance a third entity to be known as the "Professional Standards Division," and to specify its functions. The two preexisting divisions were the "Uniformed Division" and the "Technical Services Division." This ordinance, designated Ordinance No. 2006-2859, also amended the authorized membership of the department to delete the rank of captain, to increase the maximum number of deputy chiefs to three, and to reduce the maximum number of lieutenants to nine.
Prior to the introduction of Ordinance No. 2006-2859, consideration of the creation of the Professional Standards Division was discussed at a Township Committee meeting to which the public was not invited. Plaintiff filed this action on April 5, 2006. His original complaint contained four counts. The first two alleged violations of the Open Public Meetings Act, N.J.S.A. 10:4-6 to -21, and the third and fourth counts sought disclosure of records pursuant to the Open Public Records Act, N.J.S.A. 47:1A-1 to -13. Those counts were ultimately dismissed, and plaintiff has not cross-appealed from their dismissal.[1]
Soon after filing his original complaint, plaintiff filed an amended complaint adding a fifth count, alleging that on April 17, 2006, the Township Administrator, acting as the Township's appointing authority, made certain promotional appointments pursuant to Ordinance No. 2006-2859 to the positions of deputy police chief and lieutenant. He alleged that Ordinance No. 2006-2859 did not comply with the requirements of Reuter, as a result of which *1009 "[s]ome of the appointments made by the appointing authority were to positions not created by a valid ordinance prior to the appointment." He sought judgment voiding such appointments.
On July 13, 2006, the court granted summary judgment to plaintiff on the fifth count. The circumstance that gave rise to that order dealt solely with the number of authorized officers within each rank with relation to the promotions made. The decision had nothing to do with the absence in the ordinance of an organizational chart or a description of the duties of the officers within each rank.
More particularly, this is what happened. A lieutenant had put in for retirement and was on "terminal leave," using accrued leave time prior to his actual retirement date. Another lieutenant was promoted to the new deputy chief position created by Ordinance No. 2006-2859. Two sergeants were promoted to the rank of lieutenant. One filled the vacancy of the individual who was promoted to deputy chief. The other filled the position of the lieutenant out on terminal leave. The court concluded that the ordinance authorized only nine lieutenant positions and, including the individual on terminal leave, there were currently ten lieutenants in the department.
To remedy the situation, in August 2006, the Township adopted another amendatory ordinance, Ordinance No. 2006-2889, which referenced in its preambles the litigation and order of the court. The ordinance added a section authorizing the permanent appointment of an officer to replace not more than one sergeant or one lieutenant no longer on active service who is on terminal leave pending resignation or retirement.
Plaintiff then expanded his Reuter argument. In an amended pretrial order of December 18, 2006, plaintiff's contention was broadened to contend that the ordinance was noncompliant with the Reuter requirements because it "does not delineate a table of organization or the duties of each position listed." The trial court ultimately agreed, based upon comments in this court's Reuter decision stating that an ordinance creating a police department "must establish the `line of authority,' i.e., organizational chart, and, when it is determined such positions are necessary, provide for the appointment of a Chief and other department personnel. The ordinance must also establish the terms of office, compensation, and responsibility." Reuter, supra, 328 N.J.Super. at 554, 746 A.2d 511. The "line of authority" reference is from the enabling statute, N.J.S.A. 40A:14-118, which provides in relevant part:
The governing body of any municipality, by ordinance, may create and establish, as an executive and enforcement function of municipal government, a police force, whether as a department or as a division, bureau or other agency thereof, and provide for the maintenance, regulation and control thereof. Any such ordinance shall, in a manner consistent with the form of government adopted by the municipality and with general law, provide for a line of authority relating to the police function and for the adoption and promulgation by the appropriate authority of rules and regulations for the government of the force and for the discipline of its members. The ordinance may provide for the appointment of a chief of police and such members, officers and personnel as shall be deemed necessary, the determination of their terms of office, the fixing of their compensation and the prescription of their powers, functions and duties, all as the governing body shall deem necessary for the effective government of the *1010 force. Any such ordinance, or rules and regulations, shall provide that the chief of police, if such position is established, shall be the head of the police force and that he shall be directly responsible to the appropriate authority for the efficiency and routine day to day operations thereof, and that he shall, pursuant to policies established by the appropriate authority:

a. Administer and enforce rules and regulations ...;
b. Have, exercise, and discharge the functions, powers and duties of the force;
c. Prescribe the duties and assignments of all subordinates and other personnel;

d. Delegate such of his authority as he may deem necessary ...; and
e. Report at least monthly to the appropriate authority....

As used in this section, "appropriate authority" means the mayor, manager, or such other appropriate executive or administrative officer ....
Except as provided herein, the municipal governing body and individual members thereof shall act in all matters relating to the police function in the municipality as a body, or through the appropriate authority if other than the governing body.
....
[Emphasis added.]
The Township ordinance designated the Township Administrator as the "appropriate authority" pursuant to N.J.S.A. 40A:14-118. We think it helpful here to set forth at length the relevant portions of the ordinance, as amended by Ordinance No. 2006-2859 and Ordinance No. 2006-2889, and codified in the Township's Code as Chapter 44 (POLICE DEPARTMENT):
§ 44-1. Department continued.
....
§ 44-2. Headquarters; business hours.
....
§ 44-3. Organizational structure.
For the purposes of administration and efficiency, the Police Department is divided into the following three (3) divisions:
A. Uniformed Division.
B. Technical Services Division.
C. Professional Standards Division.
§ 44-4. Uniformed Division.
The Uniformed Division is generally charged with the following functions.
A. Patrolling public streets, public areas and parks within the township in a manner to perform effectively the duties of the Department; prevent violations of laws and ordinances; suppress disturbances; arrest offenders; and give aid, relief and information to persons as circumstances require.
B. Detention and transportation of prisoners.
C. Supervision of police reserves, including special officers performing police functions, and adult crossing guards.
D. Provide traffic studies, including speed surveys, traffic counts, accident location studies and statistical analyses.
E. Provide traffic enforcement, including accident investigations and traffic law enforcement.
§ 44-5. Technical Services Division.
The Technical Services Division is generally charged with the following functions:
A. Prevention of crime; apprehension of offenders; location of *1011 missing persons; suppression of gambling and vice; processing of extradition proceedings; recovery of lost or stolen property.
B. Establish and operate Juvenile Aid Section, which shall administer a broad program for the prevention and reduction of juvenile delinquency and assist in the rehabilitation of juveniles and in various guidance.
C. Investigation of crimes and performance of necessary testing of materials related to crime scenes or required for the apprehension of criminal offenders; investigations required in connection with applications for licenses or permits.
D. Establish and maintain a system of books, records, accounts, reports, and papers necessary for police functions; furnish materials, supplies, and maintenance for the Department; supervise storage, maintenance, preservation and disposal of lost and stolen property, contraband, and evidence.
E. Establish and operate the police communications systems, including the telephone switchboard, teletype and radio system, and a computer system for the Police Department.
F. Supervise and operate crime prevention programs as determined appropriate.
G. Supervise and operate community service programs, including public education programs such as driver clinics, bicycle safety programs, and drug awareness programs for school children and adults.
§ 44-6. Professional Standards Division.
The Professional Standards Division is generally charged with the following functions.
A. Development, review and monitoring of existing police policies and procedures, and recommending changes or amendments.
B. Development, implementation and scheduling of training programs for the Police Department and police personnel at both on- and off-site locations.
C. Investigation of internal police matters or incidents involving allegations of potential misconduct.
D. Police Accreditation Compliance Coordinator.
§ 44-7. Responsibility of command.
A. Pursuant to N.J.S.A. 40A:14-118, the appropriate authority presiding over the operation of the Police Department is the Township Administrator. The Chief of Police and all other members of the Police Department are under the authority of the Township Administrator. The Township Administrator shall have the authority to establish policies and administrative direction and to issue and amend as necessary rules and regulations. The Township Administrator as the appropriate authority shall be the final authority as to all disciplinary decisions and appeals under the rules and regulations. The Township Administrator may delegate the initial hearing process to a township official who, in his opinion, is qualified to act as a finder of fact, but the final decision rests with the Township Administrator. Nothing herein shall effect [sic] the grievance process as contained in the contract between the Township of Middletown and the Police Benevolent Association or the Superior Offices Associations.

*1012 B. The order of rank of sworn officers in the Police Department is as follows:
(1) Chief (no more than 1)
(2) Deputy Chief (no more than 3)
(3) Lieutenant (no more than 9)
(4) Sergeant (no more than 13)
(5) Patrol Officer (no more than 81)
(6) The authorized number of officers in the ranks of Sergeant and Lieutenant shall be increased and/or exceeded, to Sergeant (no more than fourteen (14)) and Lieutenant (no more than ten (10)), to permit the Appointing Authority in his discretion to permanently appoint an officer to replace any Sergeant or Lieutenant no longer on active service on terminal leave pending resignation or retirement; said resigning/retiring officer having provided written notice of the resignation/retirement and its effective date that has been accepted by the Appointing Authority.
§ 44-8. Duties and responsibilities of Chief of Police.
The Chief of Police shall be the head of the Police Department and shall be directly responsible to the appropriate authority for the efficiency and day-to-day operations of the Department. He shall, pursuant to policies established by the appropriate authority, exercise executive authority and supervision of departmental work. The Chief shall:
[Paragraphs A through I set forth the authority of the Chief. Included among them, as Paragraphs E through I, are the verbatim provisions set forth in N.J.S.A. 40A:14-118a to e.]
§ 44-9. Responsibilities of Police Physician.
....
§ 44-10. Special duty assignments for police officers.
....
[References to amendatory ordinances omitted.]
The Township argues on appeal that the trial court read Reuter too broadly in invalidating its ordinance because it did not include an organizational chart and specific duties for officers within each rank. We agree with the Township. The trial court relied upon the language to that effect in the opinion of this court, which the Supreme Court affirmed with limited comments, substantially for the reasons expressed in this court's opinion. See Reuter, supra, 167 N.J. at 41, 768 A.2d 769. However, the limited issue in Reuter was whether a deputy chief position could be created and filled by resolution of the governing body, or whether the position had to be created by ordinance. We held, and the Supreme Court affirmed, that an ordinance is required.
Therefore, the comment in our opinion equating the "line of authority" referenced in N.J.S.A. 40A:14-118 to an "organizational chart," and making that a mandatory portion of an ordinance creating a police department was dictum. We are mindful that the Supreme Court affirmed substantially for the reasons expressed in our opinion. This calls into question whether the Court adopted this dictum, for if it did, and if it was deemed carefully considered, necessary to the decision reached, or directly involved with the central issue in the case, we are bound by it. State v. Breitweiser, 373 N.J.Super. 271, 282-83, 861 A.2d 176 (App.Div.2004), certif. denied, 182 N.J. 628, 868 A.2d 1031 (2005); Barreiro v. Morais, 318 N.J.Super. 461, 468-69, 723 A.2d 1244 (App.Div.1999). Our initial analysis assumes that we are so bound.
When we said in Reuter that a police ordinance must include an "organizational *1013 chart," the meaning we attributed to the term is found within the four corners of the opinion. We quoted this provision of the Fort Lee ordinance under review: "The police department shall consist of a chief, and such number of deputy chiefs, inspectors, captains, lieutenants, sergeants, patrolmen and special officers as may be determined from time to time by resolution of the mayor and council." Reuter, supra, 328 N.J.Super. at 552, 746 A.2d 511. We contrasted that ordinance provision with the "Fort Lee Police Department Organizational Chart," which demonstrated that the department "consisted of one Chief, two Deputy Chiefs, four Captains, three Lieutenants, fourteen sergeants, sixty-nine Police Officers, and twenty-four Supervisors." Ibid. Therefore, when we equated the "line of authority" required by N.J.S.A. 40A:14-118 to an "organizational chart," we meant a listing by rank and the number within each rank of the authorized members of the department. Certainly, the Township ordinance is fully compliant with this requirement.
But we went further and said that "[t]he ordinance must also establish the terms of office, compensation, and responsibility." Id. at 554, 746 A.2d 511. In this case, plaintiff has challenged only the absence of the definitions of the responsibilities or duties of officers within each rank. Plaintiff has advanced no argument based on the absence of terms of office or compensation.
With respect to the challenged component, the Township ordinance sets forth in significant detail the responsibility of officers assigned to the various divisions established within the department. And, pursuant to N.J.S.A. 40A:14-118c, and the cognate provision of the Township ordinance, the chief possesses the authority to "[p]rescribe the duties and assignments of all subordinates and other personnel." Therefore, if specification of responsibility of officers is required, the requirement is met.
We offer these brief comments regarding the two components that plaintiff has not challenged. Salaries of police officers, like all public employees, typically change from year to year and conform to collective bargaining agreements negotiated from time to time. Each year at the annual organization meeting a salary ordinance is adopted setting forth the applicable salaries within each rank, or a range of such salaries. Thus, the required solemnity of an ordinance is observed and updated at least annually. As to the term of office, police officers generally serve an indeterminate term, N.J.S.A. 40A:14-128, subject to civil service (the Township is a civil service municipality) and other provisions regarding probationary terms. See Azzara v. Twp. of Waterford, 392 N.J.Super. 322, 327-30, 920 A.2d 725 (App.Div.2007).
We now shift the focus of our analysis and assume that we are not bound by the Reuter comment that the line of authority referred to in N.J.S.A. 40A:14-118 refers to the relationship from the chief down through the ranks, internally within the department. It seems to us that, based upon the interrelated provisions of N.J.S.A. 40A:14-118, the legislative history of the 1981 amendments to that section, and prior case law, the line of authority reference in the statute refers to the relationship from the chief upward. In other words, it refers to the relationship between the chief, as the head of the department, and the municipal governing body.
The statute requires that an ordinance creating a police department "provide for a line of authority relating to the police function and for the adoption and promulgation by the appropriate authority of rules and regulations." N.J.S.A. 40A:14-118. If the ordinance provides for a chief of police, *1014 that individual "shall be the head of the police force and ... shall be directly responsible to the appropriate authority" for the operation of the department. Ibid. The statute then confers on the chief specified authority, including the prescribing of duties and assignments of all subordinates in the department. N.J.S.A. 40A:14-118c. Finally, the statute provides, subject to certain exceptions not relevant here, that "the municipal governing body and individual members thereof shall act in all matters relating to the police function in the municipality as a body, or through the appropriate authority if other than the governing body." N.J.S.A. 40A:14-118.
The 1981 amendments to the statute are often referred to as "The Police Chiefs' Bill Of Rights." Indeed, the Supreme Court has stated:
In 1981 the Legislature amended N.J.S.A. 40A:14-118 to redefine the relationship between a municipal governing body and the chief of police. The amendment states that municipalities by ordinance shall `provide for a line of authority relating to the police function * * *.' ... By granting chiefs of police express statutory authority, the statute sought to avoid undue interference by a governing body into the operation of the police force.
[Falcone v. De Furia, 103 N.J. 219, 221-22, 510 A.2d 1174 (1986).]
Subsequent to the Reuter decisions, a panel of this court had occasion to consider the validity of a Trenton ordinance establishing a table of organization for its police department, and whether the ordinance was an appropriate subject of referendum. In re Referendum Petition to Repeal Ordinance 04-75, 388 N.J.Super. 405, 408, 908 A.2d 846 (App.Div.2006), aff'd as modified, 192 N.J. 446, 931 A.2d 595 (2007). After discussing at length the referendum issue, we turned to the Reuter issue, and described our holding in Reuter as limited to the proposition "that a municipal office or position, if not created by statute, must be created by ordinance and not by resolution." Id. at 418, 908 A.2d 846. We further commented that in Reuter "[w]e also determined that the ordinance must specify the number of positions to be filled through the appointment process so that the public can be appropriately informed about the cost of the new positions." Ibid. We concluded that the Trenton ordinance complied with Reuter "[b]y prescribing a range of positions for each rank." Id. at 419, 908 A.2d 846.
Both parties filed petitions for certification. In re Ordinance 04-75, supra, 192 N.J. at 456, 931 A.2d 595. The Supreme Court described this court's disposition of the Reuter issue by stating that the panel rejected the position that the Trenton ordinance involved in that case "was facially invalid because it excessively delegated administrative authority by setting a minimum and maximum range of officers to fill each rank, rather than fixing the exact number of officers for each rank." Id. at 455-56, 931 A.2d 595. The Court granted Trenton's petition for certification challenging this court's determination of the referendum issue, but the Court denied the cross-petition contesting this court's determination of the Reuter issue. Id. at 456, 931 A.2d 595.
In her concurring and dissenting opinion in Reuter, Justice LeVecchia outlined the legislative history of the 1981 amendments to N.J.S.A. 40A:14-118. Reuter, supra, 167 N.J. at 45-50, 768 A.2d 769 (LeVecchia, J., concurring and dissenting). That history demonstrates that the purpose of the amendments was to prevent meddling by elected officials in the day-to-day operations of local police departments. Ibid. This was accomplished by mandating the establishment by ordinance *1015 of a "line of authority" between the chief of police and a designated appropriate authority acting on behalf of the civilian government. Id. at 49-50, 768 A.2d 769. The legislative history confirms that, consistent with the Court's earlier comments in Falcone, the line of authority provision in N.J.S.A. 40A:14-118 referred to the relationship between the chief of police and the municipal governing body to prevent interference by elected officials in police department operations. See Falcone, supra, 103 N.J. at 221-22, 510 A.2d 1174; see also Hawthorne PBA Local 200 v. Borough of Hawthorne, 400 N.J.Super. 51, 59-60, 945 A.2d 736 (App.Div.2008) (describing Reuter's holding as pertaining to "the type and number of police positions [which] must be created by ordinance," and stating that the 1981 amendments to N.J.S.A. 40A:14-118 were "intended to decrease the influence of a local governing body over the municipal police department by leaving the department's day-to-day operations in the hands of the police chief, who would be accountable to the appropriate authority.").
In our view, therefore, the "line of authority" provision in N.J.S.A. 40A:14-118 does not require the inclusion in a police ordinance of provisions dealing with the internal structure of the department from the chief down through the ranks. This conclusion provides a separate basis upon which we hold that the Township's ordinance was not deficient for failing to include a more elaborate organizational chart. Our conclusion and holding on this basis is not at variance with the holding in Reuter that a police ordinance must create positions within the police department by ordinance and specify the maximum number of positions within each rank.
We also see no impropriety in the provision implemented by Ordinance No. 2006-2889, allowing for the appointment of not more than one lieutenant or sergeant into a slot currently held by an individual serving in that rank who is out on terminal leave pending resignation or retirement. Indeed, we have commented favorably on ordinance provisions that allow a municipality in this situation "to put its house in order and pursue the employment of new personnel in order to protect the public" while an officer is out on terminal leave pending irrevocable resignation or retirement. N. Arlington PBA # 95 v. Borough of N. Arlington, 221 N.J.Super. 520, 523, 535 A.2d 29 (App.Div.1987). In those circumstances, "no municipality should be compelled to wait for months or years to bring its force up to the necessary strength." Id. at 523-24, 535 A.2d 29. This is sound public policy and is directly applicable here. By incorporating the provision in the police ordinance, the required solemnity for authorizing these limited additional positions for limited time frames under carefully circumscribed conditions was met. The public was given notice of the proposed provision and given an opportunity for input before its final adoption. And, the public is on notice of the additional costs that will be incurred if officers are moved into those positions under the prescribed circumstances.
Finally, we comment on two additional issues raised by the Township. First, it argues before us, as it did in the trial court, that plaintiff lacked standing to challenge the validity of the Township's police ordinance. Plaintiff is a taxpayer in the Township but not a resident. For many years, he has leased office space in the Township, from which he conducts his law practice. We agree with the trial court that plaintiff possesses a sufficient interest in the validity of the ordinance providing for such an important purpose as the operation of the police department and maintaining the safety of the community. See Falcone, supra, 103 N.J. at 226, 510 *1016 A.2d 1174 (holding that when a party presents a question of substantial public interest, any slight additional private interest is sufficient to afford standing, and there is a substantial public interest regarding the authority to appoint police officers to a particular rank and for the proper allocation of responsibilities between the governing body and the chief of police).
Second, the Township contends that police officers who were the subject of promotions and who were ordered by the trial court, when it invalidated the ordinance, to be demoted to their previous rank, were denied due process because they were not included as defendants. This argument lacks merit. The trial court was very careful to order the Township to provide notice to all affected officers and inform them of their right to intervene because they might be affected by the outcome. Most of the affected officers did intervene. The court also allowed the Middletown Police Benevolent Society and the Middletown Superior Officers Association to intervene. Any officer who did not intervene did so by choice, not due to lack of notice or opportunity.
The order declaring the Township police ordinance void, as amended by Ordinance No. 2006-2859 and Ordinance No. 2006-2889, is reversed.
NOTES
[1] Because plaintiff has not cross-appealed, we do not address his appellate arguments regarding the Open Public Meetings Act.